**CITIZENS FOR EQUAL PROTECTION, INC.; Nebraska Advocates for Justice and Equality, Inc.; and ACLU Nebraska, Plaintiffs,**

v.

**Attorney General Jon BRUNING and Governor Michael O. Johanns, Defendants.**

**No. 4:03CV3155.**

United States District Court, D. Nebraska.

Nov. 10, 2003.

Amy A. Miller, American Civil Liberties Union Foundation of Nebraska, Lincoln, NE, David S. Buckel, Lambda Legal, New York, NY, Fred B. Chase, Lambda Legal, Dallas, TX, James D. Esseks, Tamara Lange, ACLU Foundation, New York, NY, Robert F. Bartle, Bartle, Geier Law Firm, Lincoln, NE, for Plaintiffs.

Matthew W. McNair, Attorney General's Office, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### Introduction

This matter is before the court on defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Filing No. 22. Defendants contend that this case should be dismissed as the plaintiffs lack standing, the case lacks ripeness, and the cause of action for bill of attainder should be dismissed. I have carefully reviewed the record, briefs in support of and in opposition to the motion, and the relevant case law. I conclude that the motion to dismiss should be denied.

### Background

Guyla Mills headed a petition drive, known as Initiative 416. Nebraska voters adopted Initiative 416 in 2000. On December 7, 2000, Governor Johanns signed the Initiative into law as Article 1, Section 29 of the Nebraska Bill of Rights. Section 29 states: "Only marriage between a man and a woman shall be valid or recognized in Nebraska. The uniting of two persons of the same sex in a civil union, domestic partnership, or other similar same-sex relationship shall not be valid or recognized in Nebraska."

The plaintiffs, Nebraska organizations that have lesbian, gay, and bisexual members, contend the second sentence of Section 29 should be declared unconstitutional as it prohibits lesbian, gay, and bisexual persons from accessing the political process to attempt to obtain legal protections, virtually barring legal protection of any kind to same-sex relationships. Plaintiff Citizens for Equal Protection is a nonprofit membership organization whose mission is to stop discrimination based on sexual orientation through legislation and education. Plaintiff Nebraska Advocates for Justice and Equality is a nonprofit organization that was created in response to the anti-gay campaign for Initiative 416. Both plaintiffs lobby for legislation that is designed to protect the needs of its members. Plaintiff ACLU is a nonprofit entity that advocates for the protection of civil liberties for all persons.

Plaintiffs argue that they are unable to, at the very least, seek legislation to provide legal protections for those in same-sex relationships. In support of their arguments, plaintiffs note that they approached Senator Nancy Thompson and asked her to draft legislation concerning domestic partnerships and, in particular, language that relates to health, funeral, hospital and organ donations. Senator Thompson proposed a bill on January 22, 2003, to allow both same-sex and different-sex couples to make decisions regarding funeral arrangements and organ donations. Filing No. 1, Ex. A. Senator Thompson submitted a request to Nebraska Attorney General Bruning asking him to issue an opinion as to the constitutionality of such legislation. On March 10, 2003, the Attorney General issued an opinion determining that the proposed bill would violate Section 29. Filing No. 1, Ex. B. Plaintiffs also have a draft bill entitled "Financial Responsibility and Protection for Domestic Partners Act" which would allow same-sex couples to formalize their responsibilities to each other and would allow private companies to offer certain benefits to domestic partners. Filing No. 1, Ex. C. However, because of Section 29 and the recent opinion of the Attorney General, plaintiffs will not have the opportunity to present this legislation to the Unicameral. They argue they are no longer permitted to lobby members of the Unicameral regarding health care decisions, living expenses, funeral arrangements, and hospital visitations.

Section 29 is the only law of its kind in the United States. According to the plaintiffs, over 150 local governments offer same-sex health benefits; a number of states and municipalities offer domestic partner registries; and over 5,000 companies recognize same-sex couples domestic partnerships. Filing No. 1, ¶ 20.

In this lawsuit, plaintiffs are seeking an equal opportunity to lobby their elected representatives regarding legal protections for same-sex relationships. They are not asking this court for any particular remedies relating to marriage, civil unions, or domestic partnerships.

### Standard of Review
### Fed.R.Civ.P. 12(b)(1)

For the court to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction. *Id.*

If a plaintiff lacks standing, the district court has no subject matter jurisdiction. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir.2002). Therefore, a standing argument implicates Rule 12(b)(1). To establish standing, a plaintiff must show that it is likely that the remedy sought can redress the injury. *Id.* A threat of injury must be both real and immediate, not conjectural and hypothetical. *Id.*

### Fed.R.Civ.P. 12(b)(6)

In reviewing a complaint on a Rule 12(b)(6) motion, the court must consider all of the facts alleged in the complaint as true and construe the pleadings in a light most favorable to the plaintiff. *See, e.g., Brotherhood of Maint. of Way Employees v. BNSF R.R.*, 270 F.3d 637, 638 (8th Cir.2001). A dismissal is not lightly granted. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v.*

*City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001). When accepting the facts of the complaint as true, a court will not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)). A dismissal under Rule 12(b)(6) is therefore granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief," *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir.1999), such as a missing allegation about an element necessary to obtain relief or an affirmative defense or other bar. *Doe v. Hartz,* 134 F.3d 1339, 1341 (8th Cir.1998). The court does not determine whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of his claim. *Doe v. Norwest Bank,* 909 F.Supp. 668, 670 (D.Minn.1995).

### *Discussion*

### *Standing*

■ Defendants argue that plaintiffs lack standing to challenge the constitutionality of Section 29. Plaintiffs contend that they have already been injured by the defendants and do in fact have standing to pursue this lawsuit. In order to establish standing, the plaintiffs in this case must show (1) an injury in fact where there is harm, either actual or imminent; (2) causation that connects the plaintiffs' injury with the conduct of the defendant; and (3) redressability—whether the requested relief will actually address the injury. *Northeastern Fla. Chapter of the Assoc. Gen. Contractors v. City of Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). With regard to the initial factor, defendants argue first that there is no injury, as plaintiffs could try to amend the constitution and second, because plaintiffs did not have any rights

under Nebraska law prior to the passage of Section 29.

Plaintiffs argue that they do have injury-in-fact, as Section 29 is a barrier that prevents them from proposing and passing legislation. Plaintiffs rely on *Northeastern Fla. Chapter of the Assoc. Gen. Contractors* wherein the court held that the injury-in-fact required for standing in "an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* at 666, 113 S.Ct. 2297. The court further stated that "when the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* Plaintiffs also rely on the fact that they have alleged an equal protection violation in this lawsuit on the basis similar to that which was found to be unconstitutional in *Romer v. Evans,* 517 U.S. 620, 621, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (disqualification of a class from seeking legal protections held to violate equal protection).

In the case at hand, Senator Thompson introduced Legislative Bill 671, but following the opinion of the Attorney General, she took no further action. It is obvious that Section 29 acts as a barrier to the ability of the plaintiffs to obtain support for the introduction and passage of legislation. I conclude that Section 29 acts as a barrier to plaintiffs' participation in the political process, and thus as a result plaintiffs have established injury for purposes of the standing requirement.

Defendants argue the second prong, causation, is not proven as the plaintiffs can pursue other avenues to redress their

grievances and to obtain the benefits they want. Plaintiffs argue that the conduct of the defendants has caused them to be unable to even produce bills for legislative review. I agree. Plaintiffs' inability to access the legislative system is directly caused by the passage of Section 29. Consequently, I determine that plaintiffs have established causation for purposes of the standing requirement.

With regard to prong three, redressability, defendants contend that plaintiffs would only receive emotional gratitude if they overturn Section 29, as they have not received any real injury. They argue that such "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Plaintiffs have alleged an equal protection violation in their complaint. Filing No. 1. If plaintiffs were to win on the merits of the case, and if Section 29 is found to be unconstitutional, then plaintiffs would receive the relief they have requested, namely, access to the legislative process. Consequently, I determine that plaintiffs have established redressability for purposes of the standing requirement.

### Ripeness

■ Ripeness "is peculiarly a question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580, 15 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (citations omitted). To be ripe for decision, a case must satisfy two elements: (1) the issues must be fit for judicial decision, and (2) there must be hardship to the parties by withholding the court's consideration. *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 123 S.Ct. 2026, 2036, 155 L.Ed.2d 1017 (2003). If "front-

desking" occurs, then the case is more likely ripe for judicial decision. *Reno v. Catholic Soc. Serv., Inc.,* 509 U.S. 43, 61–63, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (illegal aliens were having their applications rejected before a determination of their eligibility for legalization, called "front-desking," and thus ripe for review). Plaintiffs argue that front-desking is occurring in this case. Defendants argue that no action has yet been taken against an individual or group that is cognizable by the court. Defendants seem to argue that plaintiffs must first get legislation passed and have it invalidated by the court before injury occurs. As plaintiffs point out, the defendants have missed the point of plaintiffs' argument in this regard. Plaintiffs have tried to submit legislation, through Senator Thompson, to the Unicameral. There is a barrier hindering their ability to even present the proposed legislation. Consequently, I determine that plaintiffs have established sufficient injury so as to conclude that the claim in this case is ripe for review. I further conclude that this is the type of decision that should be decided by the court, that the issue is not premature, and that further hardship will occur if plaintiffs are not permitted to seek judicial intervention.

### Bill of Attainder

■ Plaintiffs allege in their complaint that the actions by the defendants constitute a bill of attainder. To be considered a bill of attainder the legislative act must (1) apply to named individuals or easily ascertainable members of a group, (2) inflict punishment, and (3) be without judicial trial. *United States v. Lovett,* 328 U.S. 303, 315, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946). The bill of attainder clause is "to be read in light of the evil the Framers had sought to bar: legislative punishment, of any form or severity, of specifically designated persons or groups."

*United States v. Brown,* 381 U.S. 437, 447, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

### A. Named Individual or Easily Ascertainable Group

█ The legislative act should in general name persons to be punished or by described terms of conduct. *Selective Serv. Sys. v. Minn. Public Interest Research Group,* 468 U.S. 841, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (applied to group of people who failed to register for the draft). The specificity requirement is met when the law applies to "easily ascertainable members of a group." *Brown,* 381 U.S. at 448–49, 85 S.Ct. 1707. As the court points out, it was not that unusual for the English bills of attainder "to inflict their deprivations upon relatively large groups of people, sometimes by description rather than name." *Brown,* 381 U.S. at 461, 85 S.Ct. 1707. In the case before me, Article 1 Section 29 names both specific groups and also describes them in terms of their conduct. Section 29 names the specific group of "civil unions" and "Domestic Partners" and describes their conduct as "the uniting of two persons of the same sex." Consequently, I conclude that plaintiffs have shown Section 29 applies to an easily ascertainable group.

### B. Without Judicial Trial

A reading of Section 29 establishes that there is no judicial trial before preventing the legal recognition of same-sex relationships. All parties appear to concede this issue, and upon a review of the statute and the record, I conclude that Section 29 does not provide for a judicial trial.

### C. Infliction of Punishment

In deciding whether a legislative act inflicts punishment, the Supreme Court has recognized three necessary inquiries: (1) whether the challenged legislation falls within the historical meaning of legislative punishment, (2) whether the statute can be said to further nonpunitive legislative purposes, and (3) whether the legislative record shows a congressional intent to punish. *Selective Serv. Sys.,* 468 U.S. at 852, 104 S.Ct. 3348; *Planned Parenthood v. Dempsey,* 167 F.3d 458, 465 (8th Cir.1999).

*Historical Meaning*

Historically, bills of attainder imposed the death penalty, but lesser penalties have also been included. *Selective Serv. Sys.,* 468 U.S. at 852, 104 S.Ct. 3348. The court in discussing these changes has stated: "the list of punishments forbidden by the Bill of Attainder Clause has expanded to include legislative bars to participation by individuals or groups in specific employment or professions." *Id. See also Brown,* 381 U.S. 437, 85 S.Ct. 1707 (Communist Party members barred from labor union); *United States v. Lovett,* 328 U.S. 303, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (salary cuts for three government employees); *Cummings v. Missouri,* 71 U.S. 277, 4 Wall. 277, 18 L.Ed. 356 (1866) (priest disqualified from practicing as clergy); and *Garland,* 71 U.S. 333, 4 Wall. 333, 18 L.Ed. 366 (1866) (lawyers barred from practice of law). Alexander Hamilton talked about this issue and stated with regard to prohibiting the bill of attainder:

> [O]f this kind is the doctrine of disqualification, disenfranchisement, and banishment by the acts of the legislature. The dangerous consequences of this power are manifest. If the legislature can disenfranchise any number of citizens at pleasure by general descriptions, it may soon confine all the votes to a small number of partisans, and establish an aristocracy or oligarchy....

*United States v. Brown,* 381 U.S. at 444, 85 S.Ct. 1707, (quoting III (John C.) Hamilton, *History of the Republic of the United States,* p. 34 (1859)) (quoting Alexander Hamilton). As discussed in *Brown,* that

the legislature of the United States passed statutes to single out the Tories and restrict their ability to resist the revolution, and as the legislature did against Communist Party membership, plaintiffs argue Section 29 is directed at gay, lesbian, bisexual and transsexual people to prohibit their political ability to effectuate changes proposed by the majority. *Id.* at 442, 85 S.Ct. 1707.

Clearly, plaintiffs have made an initial case that the law in question operates as a legislative bar for their specified groups. Accordingly, I find that the challenged legislation falls within the historical meaning of the term punishment.

*Legislative Purpose/ Intent to Punish*

Because the arguments are overlapping in some respects with regard to these two inquires, I shall address them simultaneously. Defendants argue that the purpose of Section 29 is to retain the traditional meaning of the word "marriage," i.e., as being between a man and a woman. Thus, they argue, Section 29 does not punish or prohibit any conduct. Defendants rely on the case in which the court concluded that the "Don't Ask, Don't Tell" policy was not a bill of attainder. *Richenberg v. Perry,* 97 F.3d 256, 264 (8th Cir. 1996).

Plaintiffs argue that "Section 29 imposes punishment by depriving lesbian, gay and bisexual people of their civil and political rights to attempt to persuade their governmental representatives and employers to protect their intimate relationships and by singling them out for moral censure." Filing No. 30, Brief of Plaintiffs, at 32. Plaintiffs first argue that Section 29 disenfranchises lesbian, gay and bisexual people as they no longer can petition their representatives and city government for legislative change. Prior to Section 29, they had the right to use the political process. Plaintiffs argue that this type of disenfranchisement is the equivalent of punishment.

Further, contend the plaintiffs, Section 29 prohibits government employers from offering benefits, such as family health insurance and retirement benefits, to cohabiting gay, lesbian, bisexual and transsexual employees. Plaintiffs argue that this constitutes punishment. Third, plaintiffs argue that "[t]he vice of attainder is that the legislature has decided for itself that certain persons possess certain characteristics and are therefore deserving of sanction. . . ." *Brown,* 381 U.S. at 449 n. 23, 85 S.Ct. 1707. The same is applicable in this case, urge plaintiffs, as Section 29 is intended to deny constitutional rights to gay, lesbian and bisexual persons. Plaintiffs argue that there is no nonpunitive reason for passage of Section 29.

Plaintiffs also contend that the passage of Section 29 was motivated purely to prevent gays and lesbians from accessing the political system and rendering them second class citizens. *See* Filing No. 1, ¶ 21 (comments by Guyla Mills, who led the petition drive that Section 29 was to make known that homosexual and heterosexual marriages are not equivalents and that homosexual relationships are morally inferior). This is further evidence, argue plaintiffs, of the intent to punish same-sex couples.

As stated by the Supreme Court, legislation that "identifies persons by a single trait and then denies them protection across the board," resulting in "disqualification of a class of persons from the right to seek specific protections from the law is unprecedented. . . ." *Romer,* 517 U.S. at 633, 116 S.Ct. 1620. Laws "declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.* The court further stated that such a law will "raise the inevitable inference that the disadvantage imposed is

born of animosity toward the class of persons affected." *Id.* at 634, 116 S.Ct. 1620.

This is unlike the cases wherein the courts decided that statutes served nonpunitive purposes and, therefore, were valid. *See, e.g., Planned Parenthood of Mid–Missouri and Eastern Kansas, Inc. v. Dempsey,* 167 F.3d 458 (8th Cir.1999) (removal of funding for abortion services deemed to support nonpunitive purpose of removing State's approval from abortion services); *Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (denial of financial aid to males who would not register for draft not punishment where goal was to make males register); and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (conviction for burning selective service card not punitive where nonpunitive goal was to continue availability of selective service certificates).

Section 29 does not just withhold a benefit; it actually prohibits same-sex relationship couples from working to obtain governmental benefits. If the purpose, as offered by the defendants, of Section 29 is merely to maintain the common law definition of marriage, there would be no need to prohibit all forms of government protection or to preclude domestic partnerships and civil unions. I conclude that the plaintiffs have met the legal requirements for stating a claim of bill of attainder.

THEREFORE, IT IS ORDERED that defendants' motion to dismiss, Filing No. 22, is denied.