# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2604

_____

|  |  |  |
|---|---|---|
| Citizens for Equal Protection, et al., | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Jon C. Bruning, Attorney General; | * | District of Nebraska. |
| Dave Heineman, Governor, in their | * | |
| official capacities, | * | |
| | * | |
| Defendants - Appellants, | * | |

_____

Submitted: February 13, 2006
Filed: July 14, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

In November 2000, Nebraska voters passed by a large majority a constitutional amendment, codified as Article I, § 29 of the Nebraska Constitution, providing:

> Only marriage between a man and a woman shall be valid or recognized in Nebraska. The uniting of two persons of the same sex in a civil union, domestic partnership, or other similar same-sex relationship shall not be valid or recognized in Nebraska.

Three public interest groups whose members include gay and lesbian citizens of Nebraska commenced this action against the Governor and the Attorney General in their official capacities seeking an order declaring that § 29 violates the Equal Protection Clause and is an unconstitutional bill of attainder, and permanently enjoining its enforcement. The district court denied the State's motion to dismiss for lack of standing and ripeness. Citizens for Equal Protection, Inc. v. Bruning, 290 F. Supp. 2d 1004 (D. Neb. 2003). After the parties submitted the case on a Joint Stipulation of Facts, the district court held that § 29 violates the Equal Protection Clause, is an unconstitutional bill of attainder, and deprives gays and lesbians of their First Amendment rights. Citizens for Equal Protection, Inc. v. Bruning, 368 F. Supp. 2d 980 (D. Neb. 2005). The State appeals.[1] We reverse.

## I. Jurisdiction Issues

On appeal, the State renews its contentions that Appellees lack standing to raise these constitutional claims and that the claims are not ripe for review. Like the district court, we disagree. The State argues that Appellees lack standing -- their members have suffered no injury in fact because marriage and domestic partnership licenses are not available to same-sex couples in Nebraska, and Appellees' members can obtain

---

[1]Amicus briefs supporting the State were submitted by certain members of the Nebraska Legislature; the Nebraska Family Council; the Nebraska Catholic Conference, et al; eleven other States; Alliance for Marriage, Inc.; the American Center for Law & Justice Northeast, Inc.; American Family Association, Inc.; Focus on the Family and Family Research Council; Liberty Counsel; The National Legal Foundation; the Thomas More Law Center; thirty-four law professors; and United Families International and The Center for Arizona Policy. Amicus briefs supporting Appellees were submitted by the National Association of Social Workers and its Nebraska Chapter; Nebraska attorney Susan Ann Koenig; the American Psychological Association; and Certain Chapters of Parents, Families & Friends of Lesbians & Gays. The court appreciates their participation.

the desired results through other means. However, when the government erects a barrier making it more difficult for members of a group to obtain a benefit, "[t]he 'injury in fact'. . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." N.E. Fla. Chapter of the Assoc. General Contractors of Am. v. Jacksonville, 508 U.S. 656, 666 (1993). Appellees allege that § 29 is such a barrier.

The State argues that the constitutional issues are not ripe for judicial review because no court has struck down a law passed by the Nebraska Legislature as inconsistent with § 29. The ripeness doctrine is aimed at preventing federal courts, through premature adjudication, from "entangling themselves in abstract disagreements." Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 580 (1985). The Joint Stipulation of Facts recites that a bill did not advance out of legislative committee after the Attorney General opined that it would violate § 29. Thus, the legal issues raised in Appellees' complaint are not premature or abstract, and the relief sought and granted by the district court would remedy at least some of the alleged injury. Compare Renne v. Geary, 501 U.S. 312, 316-24 (1991). For these reasons, we conclude that, whatever the merits of their claims, Appellees have standing to raise the claims and the dispute is, at least in part, ripe for review.

The amicus brief submitted by eleven States makes an additional jurisdictional argument -- that Appellees' claims are not justiciable because neither the Governor nor the Attorney General is responsible for the alleged injury § 29 causes Appellees, diminished access to the legislative process. Nebraska does not adopt this contention, but we cannot ignore a challenge to our Article III jurisdiction. See generally Reproductive Health Serv. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon, 428 F.3d 1139, 1145-47 (8th Cir. 2005).

Under Nebraska law, the Governor and the Attorney General have broad powers to enforce the State's Constitution and statutes. See Neb. Const. Art IV, § 6;

-3-

Neb. Rev. Stat. § 84-731. The aforementioned opinion of the Attorney General that a proposed bill would run afoul of § 29 confirms that these broad powers include policing compliance with this constitutional amendment. Of course, § 29 does not require affirmative enforcement by any state official; it functions as a barrier to government action that Appellees desire. The amicus brief argues that § 29 may be challenged, for example, by a suit to compel a county clerk to marry two same-sex partners. But that argument conflates the distinction noted in N.E. Florida Contractors between challenging a barrier and having a right to the ultimate benefit. Here, as we have explained, Appellees have standing to challenge the barrier, and the dispute is ripe for review. Although one may question whether enjoining these two state officers would fully redress Appellees' alleged injuries, we agree with the concession implicit in the State's decision not to press this issue -- the Governor and the Attorney General have "some connection with the enforcement" of § 29 and therefore this suit for equitable relief falls within the exception to the State's Eleventh Amendment immunity established in Ex parte Young, 209 U.S. 123, 157 (1908). This satisfies the case or controversy requirement of Article III.

## II.  Equal Protection

In Romer v. Evans, 517 U.S. 620 (1996), the Supreme Court considered an amendment to the Colorado Constitution barring all state and local governments from allowing "homosexual, lesbian or bisexual orientation, conduct, practices or relationships" to be the basis for a claim of "minority status, quota preferences, protected status or claim of discrimination." The amendment invalidated certain local ordinances prohibiting discrimination on the basis of sexual orientation. The Colorado Supreme Court held that any constitutional amendment that infringes on "the fundamental right to participate equally in the political process [by] 'fencing out' an independently identifiable class of persons must be subject to strict judicial scrutiny" under the Equal Protection Clause of the United States Constitution. Evans v. Romer, 854 P.2d 1270, 1282 (Colo. 1993). The Colorado Supreme Court then

affirmed a later ruling that invalidated the enactment because the State failed to establish a compelling governmental interest satisfying strict judicial scrutiny. Evans v. Romer, 882 P.2d 1335 (Colo. 1994). A dissent noted that "[t]he Supreme Court of the United States has never held . . . that the right to participate equally in the political process is a fundamental right." Id. at 1359 (Erickson, J., dissenting).

After granting certiorari review, the Supreme Court affirmed but "on a rationale different from that adopted by the State Supreme Court." 517 U.S. at 626. The Supreme Court noted that the Colorado constitutional amendment "withdraws from homosexuals, but no others, specific legal protection from the injuries caused by discrimination, and it forbids reinstatement of these laws and policies." Id. at 627. The Court reasoned that the amendment "fails, indeed defies," conventional equal protection analysis because it "impos[es] a broad and undifferentiated disability on a single named group .... [and] its sheer breadth is so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class it affects." Id. at 632. The Court then concluded that the amendment lacked a rational relationship to a legitimate governmental purpose:

> It is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit. Id. at 635.

Relying primarily on Romer, Appellees argue that § 29 violates the Equal Protection Clause because it raises an insurmountable political barrier to same-sex couples obtaining the many governmental and private sector benefits that are based upon a legally valid marriage relationship. Appellees do not assert a right to marriage or same-sex unions. Rather, they seek "a level playing field, an equal opportunity to convince the people's elected representatives that same-sex relationships deserve legal protection." Citizens for Equal Protection, 368 F. Supp. 2d at 985 n.1. The argument turns on the fact that § 29 is an amendment to the Nebraska Constitution. Unlike

-5-

state-wide legislation restricting marriage to a man and a woman, a constitutional amendment deprives gays and lesbians of "equal footing in the political arena" because state and local government officials now lack the power to address issues of importance to this minority.[2]

The district court agreed, concluding "that Section 29 is indistinguishable from the Colorado constitutional amendment at issue in Romer." 368 F. Supp. 2d at 1002. In this part of its opinion, the district court purported to apply conventional, "rational-basis" equal protection analysis -- "If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold it so long as it bears a rational relation to some legitimate [government] end." Vacco v. Quill, 521 U.S. 793, 799 (1997), quoting Romer, 517 U.S. at 631. But the court in its discussion, 368 F. Supp. 2d at 997-1005, applied the same strict scrutiny analysis applied by the Colorado Supreme Court, but not by the United States Supreme Court, in Romer. Like the Colorado Court, the district court based its heightened scrutiny on Appellees' "fundamental right of access to the political process." Id. at 1003.

As Supreme Court decisions attest, the level of judicial scrutiny to be applied in determining the validity of state legislative and constitutional enactments under the Fourteenth Amendment is a subject of continuing debate and disagreement among the Justices. Though the most relevant precedents are murky, we conclude for a number of reasons that § 29 should receive rational-basis review under the Equal Protection Clause, rather than a heightened level of judicial scrutiny.

---

[2]Constitutional provisions that prohibit certain activities disadvantage the class of persons who wish to engage in the activity. For example, Article III, § 24, of the Nebraska Constitution forbids "games of chance." Does § 24 deny casino operators equal protection because they, unlike other businesses, must repeal a constitutional amendment to legalize the activities they wish to conduct? Note, too, that the equal-access theory urged by Appellees would likewise apply to a state statute that limits the policies and laws municipalities may adopt. See Washington v. Seattle Sch. Dist. No. 1, 458 U.S. 457, 477 (1982).

While voting rights and apportionment cases establish the fundamental right to access the political process, it is not an absolute right. In a multi-tiered democracy, it is inevitable that interest groups will strive to make it more difficult for competing interest groups to achieve contrary legislative objectives. This can be done, for example, by having the state legislature repeal a local ordinance, or by having the electorate adopt a constitutional amendment barring future legislation. As the Supreme Court said in upholding a state constitutional amendment in James v. Valtierra, 402 U.S. 137, 141-43 (1971):

> Provisions for referendums demonstrate devotion to democracy, not to bias, discrimination, or prejudice. Nonetheless, appellees contend that Article XXXIV denies them equal protection because . . . it hampers persons desiring public housing from achieving their objective when no such roadblock faces other groups seeking to influence other public decisions to their advantage. . . . Under any such holding, presumably a State would not be able to require referendums on any subject unless referendums were required on all, because they would always disadvantage some group. And this Court would be required to analyze governmental structures to determine whether a gubernatorial veto provision or a filibuster rule is likely to 'disadvantage' any of the diverse and shifting groups that make up the American people.

Similarly, Justice Scalia's discussion of the anti-polygamy provisions in many state constitutions illustrates the chaos that would result if all enactments that allegedly deprive a group of "equal" political access must survive the rigors of strict judicial scrutiny. Romer, 517 U.S. at 648-51 (Scalia, J., dissenting). No doubt for these reasons, although the majority opinion in Romer contained broad language condemning the Colorado enactment for making it "more difficult for one group of citizens than for all others to seek aid from the government," 517 U.S. at 633, the Court's conclusion was that the enactment "lacks a rational relationship to legitimate state interests." Id. at 632. That is the core standard of rational-basis review.

If sexual orientation, like race, were a "suspect classification" for purposes of the Equal Protection Clause, then Appellees' focus on the political burden erected by a constitutional amendment would find support in cases like Reitman v. Mulkey, 387 U.S. 369 (1967), Hunter v. Erickson, 393 U.S. 385 (1969), and Washington v. Seattle Sch. Dist. No. 1, 458 U.S. 457 (1982). But the Supreme Court has never ruled that sexual orientation is a suspect classification for equal protection purposes. The Court's general standard is that rational-basis review applies "where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 441 (1985). As we will explain, that is the case here, and therefore Appellees are not entitled to strict scrutiny review on this ground.

Rational-basis review is highly deferential to the legislature or, in this case, to the electorate that directly adopted § 29 by the initiative process. "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational-basis for the classification." F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Thus, the classification created by § 29 and other laws defining marriage as the union between one man and one woman is afforded a "strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319 (1993). The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of [the voters'] choices." Beach Communications, 508 U.S. at 313.

Our rational-basis review begins with an historical fact -- the institution of marriage has always been, in our federal system, the predominant concern of state government. The Supreme Court long ago declared, and recently reaffirmed, that a State "has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved." Pennoyer v. Neff, 95 U.S. 714, 734-35 (1878), quoted in Sosna v. Iowa,

419 U.S. 393, 404 (1975). This necessarily includes the power to classify those persons who may validly marry. "Surely, for example, a State may legitimately say that no one can marry his or her sibling, that no one can marry who is not at least 14 years old, that no one can marry without first passing an examination for venereal disease, or that no one can marry who has a living husband or wife." Zablocki v. Redhail, 434 U.S. 374, 392 (1978) (Stewart, J., concurring). In this constitutional environment, rational-basis review must be particularly deferential.

The State argues that the many laws defining marriage as the union of one man and one woman and extending a variety of benefits to married couples are rationally related to the government interest in "steering procreation into marriage." By affording legal recognition and a basket of rights and benefits to married heterosexual couples, such laws "encourage procreation to take place within the socially recognized unit that is best situated for raising children." The State and its supporting amici cite a host of judicial decisions and secondary authorities recognizing and upholding this rationale. The argument is based in part on the traditional notion that two committed heterosexuals are the optimal partnership for raising children, which modern-day homosexual parents understandably decry. But it is also based on a "responsible procreation" theory that justifies conferring the inducements of marital recognition and benefits on opposite-sex couples, who can otherwise produce children by accident, but not on same-sex couples, who cannot. See Hernandez v. Robles, No. 86, 2006 NY Slip Op 5239 at 5-6 (N.Y. Ct. App. Jul. 6, 2006); Morrison v. Sadler, 821 N.E.2d 15, 24-26 (Ind. Ct. App. 2005). Whatever our personal views regarding this political and sociological debate, we cannot conclude that the State's justification "lacks a rational relationship to legitimate state interests." Romer, 517 U.S. at 632.[3]

_____

[3]When the Supreme Court invalidated a state law criminalizing sodomy in Lawrence v. Texas, 539 U.S. 558 (2003), only Justice O'Connor relied on the Equal Protection Clause, rather than the substantive component of the Due Process Clause. Of particular relevance to this case, Justice O'Connor concluded that moral disapproval of private, consensual homosexual conduct "is an interest that is

The district court rejected the State's justification as being "at once too broad and too narrow." Citizens for Equal Protection, 368 F. Supp. 2d at 1002. But under rational-basis review, "Even if the classification . . . is to some extent both underinclusive and overinclusive, and hence the line drawn . . . imperfect, it is nevertheless the rule that . . . perfection is by no means required." Vance v. Bradley, 440 U.S. 93, 108 (1979). Legislatures are permitted to use generalizations so long as "the question is at least debatable." Heller, 509 U.S. at 326 (quotation omitted). The package of government benefits and restrictions that accompany the institution of formal marriage serve a variety of other purposes. The legislature -- or the people through the initiative process -- may rationally choose not to expand in wholesale fashion the groups entitled to those benefits. "We accept such imperfection because it is in turn rationally related to the secondary objective of legislative convenience." Vance, 440 U.S. at 109.

We likewise reject the district court's conclusion that the Colorado enactment at issue in Romer is indistinguishable from § 29. The Colorado enactment repealed all existing and barred all future preferential policies based on "orientation, conduct, practices, or relationships." The Supreme Court struck it down based upon this "unprecedented" scope. See Romer, 517 U.S. at 626, 633. Here, § 29 limits the class of people who may validly enter into marriage and the legal equivalents to marriage emerging in other States -- civil unions and domestic partnerships. This focus is not so broad as to render Nebraska's reasons for its enactment "inexplicable by anything but animus" towards same-sex couples. Id. at 632.

_____

insufficient to satisfy rational basis review under the Equal Protection Clause," but she expressly noted that "other reasons exist [for the State] to promote the institution of marriage beyond mere moral disapproval of an excluded group." 539 U.S. at 582, 585 (O'Connor, J., concurring). The Lawrence majority, too, was careful to note that the Texas statute at issue "does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." Id. at 578.

-10-

Appellees argue that § 29 does not rationally advance this purported state interest because "prohibiting protection for gay people's relationships" does not steer procreation into marriage. This demonstrates, Appellees argue, that § 29's only purpose is to disadvantage gay people. But the argument disregards the expressed intent of traditional marriage laws -- to encourage heterosexual couples to bear and raise children in committed marriage relationships. Appellees attempt to isolate § 29 from other state laws limiting marriage to heterosexual couples. But as we have explained, there is no fundamental right to be free of the political barrier a validly enacted constitutional amendment erects. If the many state laws limiting the persons who may marry are rationally related to a legitimate government interest, so is the reinforcing effect of § 29. The barrier created by § 29 was enough to confer standing, but Appellees' equal protection argument fails on the merits.

### III. Bill of Attainder

The district court also concluded "that Section 29 violates the Bill of Attainder Clause by singling out gays and lesbians for legislative punishment." 368 F. Supp. 2d at 1005.[4]    The State argues that § 29 is not a bill of attainder. We agree.

Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." United States v. Lovett,

---

[4]The court cited Art. I, § 9, cl. 3, of the Constitution, a section that applies only to Congress. We assume the court meant to cite Art. I, § 10, which bars the States from passing bills of attainder. The two provisions are construed identically. See Crain v. City of Mountain Home, 611 F.2d 726, 728-29 (8th Cir. 1979); Kerr-McGee Chem. Corp. v. Edgar, 837 F. Supp. 927, 934 n.6 (N.D. Ill. 1993).

-11-

328 U.S. 303, 315 (1946).[5] "To rise to the level of 'punishment' . . . harm must fall within the traditional meaning of legislative punishment, fail to further a non-punitive purpose, or be based on a [legislative] intent to punish." Planned Parenthood of Mid-Mo. v. Dempsey, 167 F.3d 458, 465 (8th Cir. 1999), citing Nixon, 433 U.S. at 473, and Selective Serv. Sys. v. Minn. Pub. Interest Research Group, 468 U.S. 841, 852 (1984). Although the Supreme Court has broadened the historical bill of attainder concept of punishment, it does not include "every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." Nixon, 433 U.S. at 471; see Flemming v. Nestor, 363 U.S. 603, 617 (1960) ("the mere denial of a noncontractual governmental benefit" is not punishment).

Echoing its equal protection analysis, the district court determined that § 29 inflicts punishment because it "effectively disenfranchises lesbian, gay and bisexual people and their supporters as they can no longer petition their representatives and city and local governments for legislative changes that would protect their relationship, agreements, and interests." 368 F. Supp. 2d at 1006. This political disadvantage is certainly not punishment in the historical bill of attainder sense. See Nixon, 433 U.S. at 474 (imprisonment, banishment, punitive confiscation of property, removal from employment or profession). And as our rational-basis discussion makes clear, the political harm to Appellees' members is not punishment in the functional sense because it serves the nonpunitive purpose of steering heterosexual procreation into marriage, a purpose that negates any suspicion that the supporters of § 29 were motivated solely by a desire to punish disadvantaged groups.

---

[5]The Supreme Court has frequently defined a bill of attainder as "a law that legislatively determines guilt and inflicts punishment" without a judicial trial. Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977), and cases cited. If a legislative determination of "guilt" is required, § 29 is clearly not a bill of attainder. But we will assume that punishment is the critical issue.

The district court stated that "the Bill of Attainder analysis dovetails with the . . . Equal Protection issues in this case." 368 F. Supp. 2d at 1008 n.23. This reflects an error of law because the Supreme Court has cautioned that the Bill of Attainder Clause "was not intended to serve as a variant of the equal protection doctrine." Nixon, 433 U.S. at 471. On this record, we conclude that Appellees' bill of attainder claim is without merit.

## IV. First Amendment

In addition to upholding Appellees' equal protection and bill of attainder claims, the district court ruled, *sua sponte*, "that the deprivation occasioned by the passage of Section 29 is the deprivation of the right to associational freedom protected by the First Amendment . . . and the right to petition the government for redress of grievances, which encompasses the right to participate in the political process, also protected by the First Amendment." Citizens for Equal Protection, 368 F. Supp. 2d at 989. The court never clarified whether it was holding that § 29 *violates* the First Amendment as applied to the States.

Appellees did not raise a First Amendment claim in the district court or on appeal. In any event, if the question is properly before us, we conclude that § 29 does not violate the First Amendment because (i) it "does not 'directly and substantially' interfere with appellees' ability to associate" in lawful pursuit of a common goal, and (ii) it seems "exceedingly unlikely" it will prevent persons from continuing to associate. Lyng v. Int'l Union, 485 U.S. 360, 364-66 (1988). The district court cited no case supporting its suggestion that the First Amendment right "to petition the Government for a redress of grievances" is violated by an enactment that makes it more difficult for a group with full access to the political process to *successfully* advocate its views. The First Amendment guarantees the right to advocate; it does not guarantee political success.

The district court's opinion suggests that its discussion of First Amendment interests was intended to capture useful First Amendment principles. The court noted that a statute infringing First Amendment rights is subject to strict scrutiny. 368 F. Supp. 2d at 989 n.8. Though the court claimed it did not reach the issue, it applied what we conclude was heightened scrutiny analysis in the equal protection portion of its opinion. As we have explained, this was error because § 29 is subject to rational-basis review. The district court further noted that "a First Amendment deprivation subjects the challenged enactment to examination for vagueness and overbreadth." Id. at 995. The court then invalidated § 29 under the Equal Protection Clause in part for the potential overbreadth of its second sentence, id. at 1004-05, ignoring the fact that overbreadth analysis is inconsistent with rational-basis review. This was improper. Indeed, even when First Amendment interests are potentially affected, "facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973); see Members of the City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984). Whether the second sentence might be given a limiting construction is an issue ill-suited to facial challenge.

## V. Conclusion

In the nearly one hundred and fifty years since the Fourteenth Amendment was adopted, to our knowledge no Justice of the Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution. Indeed, in Baker v. Nelson, 409 U.S. 810 (1972), when faced with a Fourteenth Amendment challenge to a decision by the Supreme Court of Minnesota denying a marriage license to a same-sex couple, the United States Supreme Court dismissed "for want of a *substantial* federal question." (Emphasis added.) There is good reason for this restraint. As Judge Posner has observed:

-14-

This is not to say that courts should refuse to recognize a constitutional right merely because to do so would make them unpopular. Constitutional rights are, after all, rights against the democratic majority. But public opinion is not irrelevant to the task of deciding whether a constitutional right exists. . . . If it is truly a new right, as a right to same-sex marriage would be . . . . [judges] will have to go beyond the technical legal materials of decision and consider moral, political, empirical, prudential, and institutional issues, including the public acceptability of a decision recognizing the new right.

Richard A. Posner, Should There Be Homosexual Marriage? And If So, Who Should Decide?, 95 Mich. L. Rev. 1578, 1585 (1997).

As we have explained, Appellees' attempt to isolate § 29 from laws prohibiting same-sex marriage because it is a state constitutional amendment fails. If there is no constitutional right to same-sex marriage, that is, if a statutory prohibition satisfies rational-basis review, then § 29 likewise survives rational-basis review. We hold that § 29 and other laws limiting the state-recognized institution of marriage to heterosexual couples are rationally related to legitimate state interests and therefore do not violate the Constitution of the United States.

The judgment of the district court is reversed and the case is remanded with directions to dismiss Appellees' complaint with prejudice. Given our decision on the merits, Appellees are no longer "prevailing parties." The district court's award of attorneys fees is therefore reversed. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Resources, 532 U.S. 598, 604 (2001).

_____