# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3084

_____

Digital Recognition Network, Inc.; Vigilant Solutions Inc.,

*Plaintiffs - Appellants*,

v.

Asa Hutchinson, in his official capacity as Governor of the State of Arkansas;
Leslie Rutledge, in her official capacity as Attorney General of the State of
Arkansas,[1]

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 14, 2015
Filed: October 13, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

---

[1]Asa Hutchinson is automatically substituted for Mike Beebe, and Leslie Rutledge is automatically substituted for Dustin McDaniel, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

COLLOTON, Circuit Judge.

Digital Recognition Network, Inc., and Vigilant Solutions, Inc., contend that the Arkansas Automatic License Plate Reader System Act, Ark. Code § 12-12-1801 *et seq.*, violates their rights to freedom of speech under the First Amendment. They sued the attorney general and governor of Arkansas under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, seeking injunctions prohibiting enforcement of the Act and a declaration that the Act is unconstitutional. The district court[2] granted the officials' motion to dismiss, ruling that the officials are immune from suit under the Eleventh Amendment. We affirm the court's dismissal on the ground that Digital Recognition Network and Vigilant Solutions lack standing, so there is no Article III case or controversy.

I.

We recite the facts according to the complaint filed by Digital Recognition and Vigilant, as we will call the companies for convenience. Vigilant Solutions developed an automatic license plate reader technique that permits computers to identify license-plate numbers in digital photographs. Digital Recognition uses Vigilant's reader technique to identify license-plate numbers in photographs taken by cameras that Digital Recognition sells to vehicle repossession companies and others. A repossession company mounts the cameras on tow trucks and other vehicles, and the cameras automatically photograph everything the vehicles encounter. Digital Recognition notifies the driver when a photographed vehicle is subject to repossession, and sells the license-plate data it collects to clients, such as automobile finance and insurance companies.

---

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

The clients use the license-plate data to identify cars that are subject to repossession and to locate cars that have been stolen or fraudulently reported as stolen. The cameras also date and time-stamp the photographs and record the global positioning system coordinates for the location at which the picture was taken. Digital Recognition uses this information to aid its clients in recovering vehicles. Digital Recognition also partners with Vigilant to make the reader data available to law enforcement agencies. The agencies use Digital Recognition's data to locate missing persons and find stolen vehicles.

Effective August 2013, Arkansas enacted the Automatic License Plate Reader System Act, which makes it "unlawful for an individual, partnership, corporation, association, or the State of Arkansas, its agencies, and political subdivisions to use an automatic license plate reader system." Ark. Code § 12-12-1803(a). The Reader System Act, as we will call it for short, permits "any . . . person claiming that a violation of [the Act] has injured his or her business, person, or reputation," to bring an action for damages against the violator. *Id.* § 12-12-1807(a).

Before the Act became law, Digital Recognition sold three camera kits to companies operating in Arkansas, and two of them had begun using the kits. Digital Recognition collected data in Arkansas, and then sold the data to clients and disseminated it to Vigilant. Law enforcement agencies in Arkansas accessed Vigilant's data, sometimes generating investigative leads. Because of the Act, Digital Recognition's camera affiliates in Arkansas have stopped using the camera kits, so Digital Recognition no longer is able to collect license-plate data in Arkansas.

Digital Recognition stopped selling or disseminating license-plate data, and the company does not offer camera kits for sale. Vigilant no longer receives data from Digital Recognition or distributes it to law enforcement agencies. The companies understand the Reader System Act to prohibit these activities. But for the Act, Digital

Recognition, Vigilant, and their affiliates would resume collection and dissemination of license-plate data and the sale of camera kits in Arkansas.

Digital Recognition and Vigilant (collectively hereafter, "Digital Recognition") sued the governor and attorney general of Arkansas in their official capacities in May 2014. Digital Recognition claimed that "use of [automatic license plate reader] systems to collect and create information" and dissemination of the information constitutes speech. According to Digital Recognition, the Act impermissibly restricts this speech based on its content—license-plate data—and on the identity of the speaker, because the Act contains exceptions for some entities, such as law enforcement agencies. *See* Ark. Code § 12-12-1803(b)(1). Digital Recognition sought a declaration that the Act violates the Free Speech Clause, and preliminary and permanent injunctive relief prohibiting application or enforcement of the Act. Digital Recognition also moved separately for preliminary injunctive relief.

The Arkansas officials moved to dismiss the case, arguing that there is no case or controversy under Article III, and that they are immune from suit under the Eleventh Amendment. The district court ruled that Digital Recognition lacked standing to seek an injunction, but had standing to pursue declaratory relief, because the court thought a declaratory judgment would redress the company's injury. The district court then concluded, however, that sovereign immunity reflected in the Eleventh Amendment barred the suit against the governor and the attorney general in their official capacities. The court considered the exception to sovereign immunity for relief against state officials with authority to enforce state law, *see Ex Parte Young*, 209 U.S. 123 (1908), but ruled that the exception did not apply, because the Arkansas officials "are not connected to enforcement of the [Reader System] Act, nor have they threatened to enforce it." The district court denied Digital Recognition's motion for preliminary injunctive relief as moot. Digital Recognition appeals, and we review the district court's ruling *de novo*. *Anderson-Tully Co. v. McDaniel*, 571 F.3d 760, 762 (8th Cir. 2009).

II.

Digital Recognition argues that the district court erred by dismissing its complaint based on the Eleventh Amendment and state sovereign immunity. The state officials make a two-fold response: The Eleventh Amendment bars the suit, because the officials do not have sufficient connection to enforcement of the Reader System Act, and there is no Article III case or controversy, because Digital Recognition lacks standing to sue.

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must show that he has suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and will likely be redressed by a favorable decision. *Id.* at 560-61. Digital Recognition must establish standing for each type of remedy sought, including declaratory and injunctive relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see Mosby v. Ligon*, 418 F.3d 927, 932-33 (8th Cir. 2005).

"The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). The Eleventh Amendment also bars suits brought against state officials if "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted). In *Ex Parte Young*, the Supreme Court established a significant exception to this immunity. The Court held that a suit to enjoin a state official's enforcement of state legislation on the ground that the official's action would violate the Constitution is not a suit against the State, and is thus not barred by the Eleventh Amendment, so long as the official has "some connection with the

-5-

enforcement the act." 209 U.S. at 155-60; *see Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011). The Court reasoned that unconstitutional state legislation is "void," and that a state official's enforcement of that legislation therefore "is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity." *Ex Parte Young*, 209 U.S. at 159. Enforcement of unconstitutional legislation "is simply an illegal act upon the part of [the] state official," and the State may not immunize officials from suit for such violations of the Constitution. *Id.* at 159-60.

In a case like this one, the questions of Article III jurisdiction and Eleventh Amendment immunity are related. Article III requires the plaintiff to show a causal connection between the state officials and the alleged injury. The Eleventh Amendment does not preclude jurisdiction over the state officials if there is "some connection" between the officials and enforcement of the challenged state law. This court concluded in one case that where state officials had "some connection with the enforcement" of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied. *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006). Bearing in mind this relationship between the two questions presented, we address the jurisdictional question whether Digital Recognition has standing to pursue its claim in federal court. *See Calderon v. Ashmus*, 523 U.S. 740, 745 & n.2 (1998).

We may assume that Digital Recognition satisfies the injury-in-fact element of standing, because it has alleged that but for the Act, it would resume collecting and disseminating license-plate data in Arkansas. This conduct is "arguably affected with a constitutional interest," *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), because the "creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2667 (2011). The Act makes it "unlawful . . . to use an automatic license plate reader system," Ark. Code § 12-12-1803(a), and there is a credible threat that private parties

-6-

will enforce the Act against Digital Recognition if it resumes collection and dissemination of license plate data. *Cf. Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2345-46 (2014). Any "person claiming that a violation of [the Act] has injured his or her business, person, or reputation" may bring a private damages action against the violator, Ark. Code § 12-12-1807(a), and the Act permits successful plaintiffs to recover the greater of actual damages or $1000 in liquidated damages, in addition to the costs of litigation. *Id.* § 12-12-1807(b).

Digital Recognition nonetheless lacks standing to sue the governor and attorney general because the injury of which Digital Recognition complains is not "fairly traceable" to either official. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). Article III requires "a causal connection" between the injury and the defendant's conduct; the injury may not be a result of "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation mark omitted). "[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007); *see Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc).

The governor and attorney general do not have authority to enforce the Reader System Act, so they do not cause injury to Digital Recognition. The Act provides for enforcement only through private actions for damages. Ark. Code § 12-12-1807. While the attorney general may intervene and defend the constitutionality of the Act in a private damages suit, *see* 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1; Ark. Code §§ 16-111-106(b), 25-16-703(a), the attorney general does not initiate enforcement or seek relief against a putative defendant. Digital Recognition's injury is "fairly traceable" only to the private civil litigants who may seek damages under the Act and thereby enforce the statute against the companies.

For the same reasons, it is not likely that Digital Recognition's injury would be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). Digital Recognition requests a permanent injunction, phrasing this request as one for an "injunction[] enjoining Defendants from applying or enforcing the Act's provisions," Compl., at 15, and an "injunction against the application or enforcement of the Act," *id.* ¶ 6. But as the district court observed, an injunction prohibiting the attorney general from intervening in a private damages action to defend the Act's constitutionality would not redress Digital Recognition's injury. "The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." *Bronson*, 500 F.3d at 1111; *see Okpalobi*, 244 F.3d at 426-27. Private litigants who assert violations of the Reader System Act may defend the constitutionality of the Act, and they will not be constrained by any injunction that could be issued against the state officials in this action. A district court has no authority to enjoin the statute; an injunction would run only against the defendants in the case. *Okpalobi*, 244 F.3d at 426 n.34.

Digital Recognition suggests that even if an injunction against the officials would not redress its injury, the district court could declare the Act unconstitutional, and the relief accorded by a declaratory judgment would satisfy Article III. A declaration, the companies argue, would substantially diminish the risk that the Act would be enforced: private parties would be less likely to sue, the attorney general would not intervene to defend the Act, and a declaratory judgment would "create precedent that binds federal and state judges in Arkansas." This argument, however, "overlooks the principle that it must be *the effect of the court's judgment on the defendant* that redresses the plaintiff's injury, whether directly or indirectly." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (emphasis added). A declaration that the Reader System Act is unconstitutional would not redress Digital Recognition's injury by virtue of its effect *on the defendant officials*. Private litigants with rights to enforce the Act would not be the subject of any relief in this action, and

any judgment would not oblige private litigants to refrain from proceeding under the Act.

A declaration of the Act's unconstitutionality would provide Digital Recognition with a favorable judicial precedent on an abstract legal issue under the First Amendment. But if that measure of relief were sufficient to satisfy Article III, then the federal courts would be busy indeed issuing advisory opinions that could be invoked as precedent in subsequent litigation. "If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability will *always* exist." *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment). Because the defendant officials do not enforce the Act, a declaratory judgment would not meet the requirement of redressability. *Bronson*, 500 F.3d at 1112; *Gandy*, 416 F.3d at 1159; *Okpalobi*, 244 F.3d at 423 n.31; *id*. at 431 (Higginbotham, J., concurring).

Digital Recognition, citing *Utah v. Evans*, 536 U.S. 452 (2002), contends that the impact of a favorable decision in future litigation, and the consequent effect on potential litigants, is sufficient to redress its injury. *Evans*, a case about methods of the Census Bureau, held that Utah had standing to sue for an injunction requiring the Secretary of Commerce to recalculate population numbers and to submit a revised census report to the President. The new report would "translate[] mechanically into a new apportionment of Representatives without further need for exercise of policy judgment." *Id*. at 462. Although the President and other officials would not be directly bound by a determination that the revised report embodied a correct interpretation of the governing law, the Court deemed it "substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision." *Id*. at 463-64. In terms of "standing" doctrine, "the courts would have ordered a change in a legal status (that of the 'report'), and the practical consequence of that change

would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Id.* at 464.

The relief sought in this case—an injunction prohibiting the attorney general from intervening to defend the Reader System Act and a declaratory judgment concerning the constitutionality of the Act—is not so directly related to an alleged injury as the revised census report and the "purely mechanical" apportionment-related steps that would follow in *Evans*. Nor is there a relationship between the state officials and potential private litigants under the Act that suggests the potential litigants would consider themselves bound to follow an order directed at the state officials. Whereas the President, as a practical consequence, was substantially likely in *Evans* to adopt a report submitted by his cabinet secretary upon order of a federal court, there is no comparable reason to assume that potential private litigants seeking damages under the Act would be influenced by an order precluding the state attorney general's intervention in their lawsuits or a declaration directed at the state officials. *See Gandy*, 416 F.3d at 1159 n.9.

We also reject Digital Recognition's contention that the decision of an inferior federal court "binds . . . state judges in Arkansas," so that a declaratory judgment in this case would provide full redress for its injury. Arkansas courts are not bound by federal law to accept the decision of an inferior federal court on the meaning of the federal Constitution. *See Johnson v. Williams*, 133 S. Ct. 1088, 1098 (2013); *Lockhart v. Fretwell*, 506 U.S. 364, 376 (1993) (Thomas, J., concurring); *Steffel v. Thompson*, 415 U.S. 452, 482 n.3 (1974) (Rehnquist, J., concurring); *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1075-76 (7th Cir. 1970); *see also* Daniel J. Meltzer, *State Court Forfeitures of Federal Rights*, 99 Harv. L. Rev. 1128, 1231 n.495 (1986); David L. Shapiro, *State Courts and Federal Declaratory Judgments*, 74 N.W. U. L. Rev. 759, 771 (1979); Robert M. Cover and T. Alexander Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L. J. 1035, 1053 (1977). The state supreme court's statement in *Malvern Gravel Co. v. Mitchell*, 385

S.W.2d 144, 147 (Ark. 1964), that it was "bound" to follow "decisions of the Federal Courts" interpreting the Federal Employers' Liability Act did not address federal constitutional questions. *Compare, e.g.*, *Busch v. Graphic Color Corp.*, 662 N.E.2d 397, 403 (Ill. 1996) ("[D]ecisions of the Federal courts interpreting a Federal act . . . are controlling upon Illinois courts."), *with People v. Williams*, 641 N.E.2d 296, 321 (Ill. 1994) ("[D]ecisions of lower Federal courts on Federal constitutional questions are not binding on State courts."); *see* Evan H. Caminker, *Why Must Inferior Courts Obey Superior Court Precedents?*, 46 Stan. L. Rev. 817, 825 & n.32 (1994) (explaining that "a state court need not follow the holdings of any inferior federal court," but that "[t]his doctrinal rule lay somewhat unsettled until recently"). Arkansas courts might find persuasive the decisions of lower federal courts resolving federal constitutional questions, but there is no Arkansas precedent requiring Arkansas courts to treat such decisions as binding authority.

Digital Recognition also raises a series of arguments based on our decisions applying the *Ex Parte Young* exception to Eleventh Amendment immunity. A state official is amenable to suit to enjoin the enforcement of an unconstitutional state statute only if the officer has "some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. at 157; *see 281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). Without that connection, the officer would be sued merely "as a representative of the state" in an impermissible attempt to "make the state a party." *Ex Parte Young*, 209 U.S. at 157. Because our court's decision in *Bruning*, 455 F.3d at 864, reasoned that a showing of "some connection" between a state official and enforcement of a state law for purposes of *Ex Parte Young* also satisfies the Article III requirements of causation and redressability, Digital Recognition asserts that our Eleventh Amendment cases demonstrate the existence of a case or controversy here. *Bruning* did not necessarily state a universal rule that equates the *Ex Parte Young* exception with Article III standing to sue, *cf. Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013), but we will assume the asserted equivalence for the sake of analysis and consider Digital Recognition's arguments in turn.

A state official's requisite connection with the enforcement of a state statute for purposes of *Ex Parte Young* may arise out of "the general law" or be "specially created by the act itself." 209 U.S. at 157. The Reader System Act, however, does not authorize the Arkansas attorney general or governor to enforce its provisions. Nor does the executive authority of the governor, Ark. Const. art. VI §§ 2, 7, or of the attorney general, *see* Ark. Const. art. VI, §§ 1, 22; Ark. Code §§ 25-16-703, -713(a), extend to enforcement of the Act. Digital Recognition claims nonetheless that the "broad powers" of these officials to enforce the Arkansas Constitution and statutes create a sufficient connection with the Act to permit suit under *Ex Parte Young*, and thus to demonstrate Article III standing.

Digital Recognition relies on *Bruning*, which held that the Nebraska governor and attorney general were subject to suit to enjoin their enforcement of a Nebraska constitutional amendment prohibiting same-sex marriage. *See* Neb. Const. art. I, § 29. This court reasoned that the Nebraska officials had a sufficient connection to enforcement of the amendment, because "[t]he Governor and the Attorney General have broad powers to enforce the State's Constitution and statutes." *Bruning*, 455 F.3d at 864. But the court's statement must be read in context. In *Bruning*, the "broad powers" of the officials included authority to enforce the constitutional amendment at issue. The Nebraska attorney general has power to enforce the Nebraska Constitution by bringing suit for a declaratory judgment that a state statute is unconstitutional, *see State ex rel. Stenberg v. Moore*, 544 N.W.2d 344, 346 (Neb. 1996), or for an injunction prohibiting the enforcement of a state statute on the grounds that it is unconstitutional. *See State ex rel. Meyer v. County of Lancaster*, 113 N.W.2d 63, 65 (Neb. 1962). The Nebraska governor has some connection to the enforcement of the Nebraska Constitution because he may direct the attorney general to file suit to enjoin application of an unconstitutional state statute. *See id.* That sort of enforcement authority is lacking with respect to a statute, like the Arkansas law at issue here, that provides only for private civil enforcement. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341-42 (11th Cir. 1999).

Digital Recognition focuses on a statement in *Bruning* that there was an Article III case or controversy even though the challenged constitutional amendment did "not require affirmative enforcement by any state official." *Bruning*, 455 F.3d at 864. But again, context is critical to proper application of the precedent. The plaintiffs in *Bruning* challenged the constitutional amendment on the ground that it denied them equal access to the legislative process to advocate for legalizing same-sex marriage. *Id.* at 863, 865. This court concluded that a case or controversy existed, even without any affirmative enforcement by the officials, because the amendment would discourage enactment of legislation permitting same-sex marriage. *Id.* at 864. But if the Nebraska legislature were to enact a statute violating the amendment, then the state officials would have authority to enforce the constitutional prohibition. The threat of that enforcement surely played an important role in discouraging legislation and gave the constitutional amendment the effect challenged by the plaintiffs. Therefore, the state officials had a sufficient connection to enforcement of the state constitution to permit a suit against them.

*Bruning* did not eliminate the longstanding requirement that a state official must have "some connection with the enforcement" of the law at issue before she is subject to suit. *Ex Parte Young*, 209 U.S. at 157. The words of the Supreme Court in *Fitts v. McGhee*, 172 U.S. 516 (1899), quoted in *Ex Parte Young*, continue in force:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be

-13-

raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Id.* at 530.

The companies also cite *Bruning* for the proposition that challengers of a state law may sue a state attorney general under *Ex Parte Young* solely because the attorney general advises the state legislature or other state officials about constitutionality of a law. But the attorney general in *Bruning* was responsible for "policing compliance" with a constitutional amendment not only by advising the legislature on a bill's compatibility with the amendment, but also by standing ready to enforce the amendment against a statute that contravened the constitution. The Arkansas attorney general's authority to advise state officials on the constitutionality of the Reader System Act, by itself, does not suffice to establish "some connection with the enforcement" of the Act and a causal connection to Digital Recognition's alleged injury.

Digital Recognition argues that the attorney general has the necessary connection to the enforcement of the Act because she may intervene and defend the Act's constitutionality in a private suit for damages. *See* 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1; Ark. Code §§ 16-111-106(b), 25-16-703(a). In a private suit for damages, however, the provisions of the Act are enforced by the private plaintiff who invokes the jurisdiction of the court and seeks damages from a particular defendant for violations of the Act. Ark. Code § 12-12-1807. If the attorney general intervenes in the case hypothesized by Digital Recognition, her role would be limited to joining with the private plaintiff in defending the Act's constitutionality. *See* 28 U.S.C. § 2403(b); Ark. Code § 16-111-106(b); *cf. Campbell v. Entergy Ark., Inc.*, 211 S.W.3d 500, 506 (Ark. 2005). The private litigant alone seeks to enforce private

rights under the statute, and if the private litigant elects to discontinue the suit, then the attorney general has no further role in enforcing the statute against the defendant. *Cf. Mobil Oil Corp. v. Attorney General*, 940 F.2d 73, 75-77 (4th Cir. 1991) (holding that pre-enforcement suit could proceed against a state attorney general where the attorney general had "an independent power to enforce" the statute through civil actions in the name of the Commonwealth to enjoin any violation).

Digital Recognition also relies on two decisions of this court concluding that state officials are subject to suit when they are "potentially proper" defendants based on enforcement authority that is contingent on an intervening act of a third party. *See Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007); *Reprod. Health Servs. of Planned Parenthood v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005). By analogy, Digital Recognition submits that the Arkansas attorney general has a sufficient connection to the Reader System Act, because she has contingent authority to defend the constitutionality of the Act in the event of a lawsuit by a private plaintiff. We decline to extend the prior decisions so far. The cited authorities, while extending *Ex Parte Young* to situations where an official's authority was contingent, did not lessen the requirement that the official have some connection *with the enforcement* of the statute. In our prior cases, the Missouri attorney general was required, when directed by the governor, to aid local prosecutors "in the discharge of their . . . duties in the trial courts and in examinations before grand juries." Mo. Rev. Stat. § 27.030; *see* 499 F.3d at 807; 428 F.3d at 1145. The attorney general thus had the authority, albeit contingent, to enforce the statutes at issue by criminal prosecution brought in the name of the State. The Arkansas attorney general, by contrast, has no comparable role in enforcing the Reader System Act; she might join a private litigant in defending the Act's constitutionality, but the private litigant alone seeks to enforce private rights under the statute.

Digital Recognition next contends that the attorney general has the requisite connection with the Reader System Act because she has authority under Arkansas

-15-

statutory and common law to sue violators to enforce the Act. The companies argue that the attorney general could bring a civil suit against those who violate the Act under the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101 *et seq.* Digital Recognition claims that a violation of the Reader System Act constitutes an "unconscionable practice" that is prohibited by Ark. Code. § 4-88-107(a)(10). The Deceptive Trade Practices Act, however, prohibits unconscionable acts or practices "in business, commerce, or trade," Ark. Code. § 4-88-107(a)(10), and thus governs only "consumer-oriented" action. *Skalla v. Canepari*, 430 S.W.3d 72, 81-82 (Ark. 2013); *see Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015). The collection and dissemination of license-plate data prohibited by the Reader System Act is not consumer-oriented, and thus does not constitute an unconscionable act subject to the attorney general's enforcement authority under the Deceptive Trade Practices Act.

Digital Recognition also argues that the attorney general could enforce the Reader System Act under Arkansas common law. The companies note that the attorney general has the authority to initiate equitable proceedings for the abatement of public nuisances, including "acts which are injurious to public health, safety, or morals," *State ex rel. Williams v. Karston*, 187 S.W.2d 327, 329 (Ark. 1945), and obstruction of traffic on the highways, *see Owens v. Town of Atkins*, 259 S.W. 396, 397 (Ark. 1924); *Ahrent v. Sprague*, 214 S.W. 68, 69 (Ark. 1919). Even if acts violating the Reader System Act are also actionable as public nuisances, however, the attorney general's enforcement action under the common law would not have "some connection with enforcement" *of the Reader System Act*. The attorney general's authority to seek injunctions against public nuisances is independent of the Act.

Digital Recognition's next offering is that the attorney general may seek an injunction prohibiting the company from violating the Reader System Act by virtue of her common-law authority to bring civil enforcement actions that protect the public interest. When the Arkansas attorney general "has a specific statutory mandate to

protect the public interest, traditional common-law prerequisites for an injunction in civil litigation, such as irreparable harm . . . , are not applicable." *Mercury Mktg. Techs. of Del., Inc. v. State ex rel. Beebe*, 189 S.W.3d 414, 420 (Ark. 2004). According to Digital Recognition, it follows from *Mercury Marketing* that the attorney general, subject to traditional prerequisites for an injunction, may bring an enforcement action without a specific statutory mandate whenever necessary "to protect the public interest"—including to enforce the Reader System Act. This argument reads too much into *Mercury Marketing*. The case establishes only that traditional requirements for injunctions do not apply when the attorney general is authorized by a specific statute to seek relief.

Digital Recognition follows with a contention that the attorney general and other state agencies authorized to use license plate readers are likely to be defendants in lawsuits alleging violations of the Act such as impermissible retention of data. Even assuming such a likelihood, the attorney general's role in defending against an action brought by a private litigant under the Act does not establish that the attorney general has some connection with *enforcement* of the Act against Digital Recognition. *Cf. 281 Care Cmte.*, 638 F.3d at 632 (concluding that *Ex Parte Young* exception applied based on a state official's responsibility to defend decisions of a state office authorized to enforce the challenged statute, combined with the state official's authority to become involved in criminal prosecutions enforcing the statute and to file civil complaints enforcing the statute).

With respect to the governor, Digital Recognition asserts that he is subject to suit because he may order the attorney general to refrain from defending the constitutionality of the Act. But because the attorney general does not have the requisite connection with enforcement of the Act, any supervisory authority of the governor over the attorney general is also insufficient to establish a case or controversy.

\* \* \*

For these reasons, the judgment of the district court is affirmed.

_____