# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3603

_____

Diane K. Balogh; American Civil Liberties Union of Missouri Foundation

*Plaintiffs - Appellees*

v.

George A. Lombardi, in his official capacity as Director of the State of Missouri Department of Corrections

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 22, 2015
Filed: March 11, 2016

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

The director of the Missouri Department of Corrections (department) has authority to select an "execution team" pursuant to Mo. Rev. Stat. § 546.720 (the statute). The statute provides a private right of action against anyone who, without the department director's approval, "knowingly disclose[s] the identity of a current or former member of an execution team." Mo. Rev. Stat. § 546.720.3. The American

Civil Liberties Union/Eastern Missouri Fund and one of its employees, Diane K. Balogh (collectively, ACLU), sued the department director, George Lombardi (director), in his official capacity. See 42 U.S.C. § 1983. The ACLU alleged the statute is unconstitutional as applied to department records the ACLU obtained under the Missouri Sunshine Law, see Mo. Rev. Stat. § 610.010 et seq., and then posted on its website. The director moved for summary judgment, arguing (1) he was immune from suit under the Eleventh Amendment to the U.S. Constitution, (2) the ACLU lacked standing, and (3) the ACLU's claims failed as a matter of law. The director appeals from the district court's order denying immunity. Having jurisdiction pursuant to 28 U.S.C. § 1292, we reverse.

## I.    BACKGROUND

Missouri law prohibits the disclosure of the identities of individuals who participate in executions. See Mo. Rev. Stat. § 546.720.3. The statute provides in relevant part:

> 2. The director of the department of corrections shall select an execution team which shall consist of those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals. The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential. . . .

> 3. A person may not, without the approval of the director . . . , knowingly disclose the identity of a current or former member of an execution team or disclose a record knowing that it could identify a person as being a current or former member of an execution team. Any person whose identity is disclosed in violation of this section shall:

> (1) Have a civil cause of action against a person who violates this section. . . .

Id.

On October 18, 2013, the department adopted an execution protocol that defines as members of the execution team "department employees and contracted medical personnel including a physician, nurse and pharmacist" and "anyone selected by the department director who provides direct support for the administration of lethal chemicals, including individuals who prescribe, compound, prepare, or otherwise supply the lethal chemicals for use in the lethal injection procedure."

On October 8 and 18, 2013, the department provided the ACLU with documents responsive to the ACLU's request under the Missouri Sunshine Law, see Mo. Rev. Stat. § 610.023 (requiring government bodies to provide their public records upon request), for department records regarding execution drugs. The ACLU published the documents on its website.

The ACLU alleges it learned of the October 18 execution protocol on October 22 and "realized that the records it published on its website would—or, at a minimum, could—identify current or former members of an execution team." Because the definition of "execution team" in the protocol included "individuals who prescribe, compound, prepare, or otherwise supply the lethal chemicals," the ACLU believed the publication of the documents it received relating to execution drugs did or could violate the statute. It removed the documents from its website.

The ACLU sought an injunction and declaratory judgment against the director, arguing the statute, as applied to the documents the ACLU possesses, violates its rights to free speech, free press, and due process under the First and Fourteenth Amendments to the U.S. Constitution. The ACLU alleged the statute "is a content-

-3-

based restriction on speech and press activity that is not narrowly tailored to promote a compelling government interest," "fails to provide [the ACLU] with ample alternatives to engage in protected speech and press activity," and "is a prior-restraint in that it requires [the ACLU] to obtain approval of [the director] before engaging in protected speech and press activity." The ACLU asserted the statute violates its right to due process because it:

> fails to give [the ACLU] fair notice of whether the disclosure of any particular public record could identify a person as a current or former member of an execution team in that [the ACLU] do[es] not know the identities of every current or former member of an execution team; the definition of execution team . . . is broad and vague; and [the ACLU is] prohibited from disclosing public records provided to them by the Department.

The director moved for summary judgment, claiming (1) he was immune from suit under the Eleventh Amendment, (2) the ACLU lacked standing, and (3) the ACLU's claims failed as a matter of law. The director, quoting Ex Parte Young, 209 U.S. 123, 155-56 (1908), asserted he was immune from suit under the Eleventh Amendment because state officers may only "be sued to prevent enforcement of an unconstitutional state statute" if such officers have enforcement authority and are "'threaten[ing] or are about to commence . . . civil or criminal . . . [proceedings] against parties affected [by] an unconstitutional act.'" (Italics omitted).

The district court concluded the director was not immune, denied in part his motion for summary judgment on that basis, and deferred ruling on his other arguments. The district court first noted "Ex Parte Young requires the defendant have some connection with enforcement of the allegedly unconstitutional statute and have demonstrated some willingness to enforce the statute." It then explained the director had a duty to "enforce [the statute] by developing and implementing an execution protocol and defining and redefining the execution team, thus determining whose

-4-

identities shall be kept confidential." The district court opined the director had "demonstrated a willingness to carry out that duty by developing an execution protocol and repeatedly revising the protocol."

The director appeals, contending the district court erred by denying him immunity and declining to dismiss the suit for lack of jurisdiction because the ACLU does not have standing.

## II. DISCUSSION

### A. Standing

"[W]e . . . first address whether this action . . . is the sort of 'Article III' 'case or controversy' to which federal courts are limited," Calderon v. Ashmus, 523 U.S. 740, 745 (1998), and determine whether the ACLU has standing.[1] To demonstrate standing, a plaintiff must show: (1) he has "suffered an injury-in-fact"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations and internal marks omitted). The ACLU, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." Id. at 561. "[E]ach

_____

[1]The Supreme Court has observed that "[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings . . . it is not coextensive with the limitations on judicial power in Article III." Calderon, 523 U.S. at 745 n.2. There is some uncertainty as to whether Calderon requires "that a court always must, or even always should, decide the Article III issues before addressing Eleventh Amendment issues." Compare Okpalobi v. Foster, 244 F.3d 405, 424-25 (5th Cir. 2001) (en banc), and Snoeck v. Brussa, 153 F.3d 984, 988 (9th Cir. 1998) (deciding the court need not reach standing because the Eleventh Amendment ended the dispute), with Cox v. City of Dallas, 256 F.3d 281, 303-04 (5th Cir. 2001) (stating that "standing must be examined before the Eleventh Amendment"). We err on the side of caution and take up the standing question first.

element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Id.

### 1. Injury in Fact

An injury in fact requires a "concrete and particularized" harm that is "'actual or imminent, not conjectural or hypothetical.'" Id. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'" Id. at 564 n.2 (quoting Whitmore, 495 U.S. at 158). "'Allegations of *possible* future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. ___, ___, 133 S. Ct. 1138, 1147 (2013) (alteration omitted) (quoting Whitmore, 495 U.S. at 158).

Although the ACLU has not yet been sued, the ACLU argues it is currently being injured because the statute has created a credible threat of legal action, which has chilled its speech. A chilling effect on speech protected by the First Amendment can constitute an injury in fact, but "'[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" Id. at 1152 (alteration in original) (quoting Laird v. Tatum, 408 U.S. 1, 11 (1972)).

The director argues the ACLU's belief that its speech has been chilled is objectively unreasonable because it does not face "a credible threat of prosecution" by the state, as required by Republican Party of Minn. v. Klobuchar, 381 F.3d 785, 792 (8th Cir. 2004). However, our recent decision in Digital Recognition Network, Inc. v. Hutchinson, 803 F.3d 952, 957 (8th Cir. 2015), suggests that "a credible threat that private parties will enforce" a statute may also satisfy the injury-in-fact requirement. In that case, we considered a constitutional challenge to the Arkansas

Automatic License Plate Reader System Act, Ark. Code § 12-12-1801 et seq., which provided for a private right of action against a person or entity who violated the statute. Id. at 954, 960-62. Digital Recognition "alleged that but for the Act, it would resume collecting and disseminating license-plate data in Arkansas." Id. at 957. We explained that such "conduct is 'arguably affected with a constitutional interest,' because the 'creation and dissemination of information are speech within the meaning of the First Amendment.'" Id. (first quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979); then quoting Sorrell v. IMS Health Inc., 564 U.S. ___, ___, 131 S. Ct. 2653, 2667 (2011)). Therefore, because "there [wa]s a credible threat that private parties w[ould] enforce the Act against Digital Recognition if it resume[d] collection and dissemination of license plate data," we assumed "Digital Recognition satisfie[d] the injury-in-fact element of standing." Id.

The director also contends the ACLU's self-censorship is objectively unreasonable because:

> [i]t is not reasonable for the ACLU to believe that the open public records the Department provided would identify any suppliers of lethal chemicals appointed as execution team members. The Department's current protocol was adopted on October 18, 2013, the same day that the Department produced open public records responsive to the ACLU's request, and shortly after [the] Department produced the first set of open public records. . . . [I]t is more plausible that the Department was aware of the pending amendment to the protocol at the time of the production and would have only provided the ACLU with documents that did *not* identify execution team members, as averred by the [records] custodian.

However, the director also suggests an injunction ordering him to authorize the ACLU to disclose on its website the documents it possesses would result in "mass distribution of execution team members['] identities." Particularly given the director's own potentially contradictory assertions on this point, we must agree with the ACLU that there is a factual dispute as to whether the documents the ACLU

possesses identify current or former execution team members. We conclude the ACLU has alleged an injury in fact because it has shown an objectively reasonable fear of legal action that chills its speech.

### 2.    Fairly Traceable

Second, Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (alterations in original) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. ___, ___, 134 S. Ct. 1377, 1391 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

The director asserts any "future hypothetical injury . . . is not traceable to" him because he has no authority to enforce the statute. See Digital Recognition Network, 803 F.3d at 957-58. The ACLU counters "there would be no chilling effect" absent the director's decisions: (1) "to redefine the membership of the execution team," and (2) not "to approve publication of the records the ACLU had previously posted on its website."[2] This may be true. However, in Digital Recognition Network we stated that "'when a plaintiff brings a pre-enforcement challenge to the constitutionality of

---

[2]The parties dispute whether the director has authority to grant such an exception. We agree that interpreting the director's authority to extend to permitting disclosure of the identities of execution team members to the general public seems contrary to the purpose of the statute—which is to keep the team members' identities confidential. We do not need to decide the proper interpretation of the statute, however, because even if we were to accept the ACLU's interpretation, the authority to grant an exception to the non-disclosure provision of the statute is not tantamount to authority to initiate or participate in a civil or criminal enforcement proceeding. See id.

a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision.'" Id. (alteration omitted) (quoting Bronson v. Swensen, 500 F.3d 1099, 1110 (10th Cir. 2007)). Thus, the ACLU's injury is not fairly traceable to the director because he does not possess any statutory authority to enforce § 546.720. See id.

### 3.    Redressability

Third, the ACLU must show it is "'likely,' as opposed to merely 'speculative,' that [its] injury will be 'redressed by a favorable decision.'" Lujan, 504 U.S. at 561 (quoting Simon, 426 U.S. at 38, 43). The director claims a favorable decision will not redress the ACLU's injury because the statute does not grant him "discretion to authorize the disclosure of the names of members of the execution team in a manner that would violate confidentiality" such as by authorizing "the mass distribution of execution team member[s'] identities on a website. Rather, . . . the Director [may] authorize disclosure to necessary personnel who are themselves bound by confidentiality under the statute." See Mo. Rev. Stat. § 546.720.

The ACLU proposes its injury could be redressed by (1) a decision holding the statute is unconstitutional as applied to the ACLU's disclosure of the records it possesses, or (2) an injunction requiring the director to approve the ACLU's disclosure of its records. The ACLU may be correct that its injury could be redressed if it secured an injunction requiring the director to grant an exception to the non-disclosure provision of the statute. However, this does not change the traceability analysis. Even if the director were able to redress the ACLU's injury, the injury is not fairly traceable to him because he does not have "'authority to enforce the complained-of provision.'" Digital Recognition Network, 803 F.3d at 958 (quoting Bronson, 500 F.3d at 1110). Rather, the ACLU's "injury is 'fairly traceable' only to the private civil litigants who may seek damages under [§ 546.720.3] and thereby enforce the statute." Id. Thus, we conclude the ACLU lacks standing.

**B.**     **Immunity**

Because the director lacks authority to enforce the challenged statute, he is also immune from suit under the Eleventh Amendment.  See id. at 960 (discussing the relationship between Eleventh Amendment immunity and "the Article III requirements of causation and redressability").  The Eleventh Amendment generally bars suits by private citizens against a state in federal court.  See, e.g., Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997).  However, state officers who "are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce . . . an unconstitutional act . . . may be enjoined . . . from such action."  Ex Parte Young, 209 U.S. at 155-56.  "The Young doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity."  Coeur d'Alene Tribe of Idaho, 521 U.S. at 288 (O'Connor, J., concurring).  "We review district court determinations of Eleventh Amendment immunity de novo."  Thomas v. FAG Bearings Corp., 50 F.3d 502, 504 (8th Cir. 1995).

On appeal the director argues he is immune from suit because the "statute does not authorize the State of Missouri, or any of its officials, to take *any* enforcement acts *against* the ACLU."  He explains "[b]ecause [he] has no authority to enforce any penalty against the ACLU if it discloses execution team members," he could not "act[] outside his role as a state official" by attempting to enforce the purportedly unconstitutional statute, and thus the Ex Parte Young exception does not permit him to be sued.

The director cites 281 Care Committee v. Arneson (281 Care Committee I), 638 F.3d 621, 625, 632-33 (8th Cir. 2011), in which this court held the Minnesota attorney general could be sued for prospective enforcement of the Minnesota Fair Campaign Practices Act because she (1) could "become involved in a criminal prosecution" upon a county attorney's request, (2) was responsible for defending in

civil court the actions of the administrative body that handled civil complaints alleging violations of the statute, and (3) apparently had the authority to commence a civil action. However, hearing the case on appeal the second time, this court held the attorney general immune based on an affidavit from the deputy attorney general attesting (1) "the attorney general's office ha[d] never" prosecuted a violation of the statute and "was not aware of any" requests from a county attorney to do so, (2) upon request, the office would not "prosecute any of the activities described in the amended complaint as a violation of" the statute, and (3) the office had never lodged a complaint with the administrative body alleging a violation of the statute, and never intended to do so. 281 Care Comm. v. Arneson (281 Care Committee II), 766 F.3d 774, 796-97 (8th Cir. 2014). The director quotes 281 Care Committee II, 766 F.3d at 797 (quoting Ex Parte Young, 209 U.S. at 156), for the proposition that the state official must "'threaten and [be] about to commence proceedings, either civil or criminal in nature, to enforce against parties affected [by] an unconstitutional act.'"

The ACLU maintains the district court was correct in concluding the director need only have "some connection," Ex Parte Young, 209 U.S. at 157, to enforcement of the statute for his conduct to fall within the immunity exception. The ACLU asserts the director is connected to enforcement of the statute because he has (1) provided the records at issue, (2) "redefined 'execution team' to create the cause of action for those who would, or could, be identified by the records," and (3) refused to grant an exception to the non-disclosure provision that would shield the ACLU from liability if it re-published the documents it possesses on its website. See Mo. Rev. Stat. § 546.720.3. We disagree.

The ACLU relies on Citizens for Equal Protection v. Bruning, in which we suggested Nebraska's attorney general and governor could be sued over a constitutional amendment banning same-sex marriage because they "ha[d] broad powers to enforce the State's Constitution and statutes" and thus had a sufficient connection to enforcement. Citizens for Equal Prot. v. Bruning, 455 F.3d 859, 864

-11-

(8th Cir. 2006), abrogated on other grounds by Obergefell v. Hodges, 576 U.S. ___, 135 S. Ct. 2584 (2015) ("[W]e agree with the concession implicit in the State's decision not to press this issue—the Governor and the Attorney General have 'some connection with the enforcement' of [the state constitutional amendment] and therefore this suit for equitable relief falls within the exception to the State's Eleventh Amendment immunity established in Ex parte Young." (quoting Ex Parte Young, 209 U.S. at 157)).

We recently elaborated upon this statement in Digital Recognition Network, 803 F.3d at 954, 960-62, in evaluating the enforcement authority of the Arkansas governor and attorney general with respect to the state's Automatic License Plate Reader System Act. See Ark. Code § 12-12-1801 et seq. We explained:

> In Bruning, the "broad powers" of the officials included authority to enforce the constitutional amendment at issue. The Nebraska attorney general has power to enforce the Nebraska Constitution by bringing suit for a declaratory judgment that a state statute is unconstitutional, or for an injunction prohibiting the enforcement of a state statute on the grounds that it is unconstitutional. The Nebraska governor has some connection to the enforcement of the Nebraska Constitution because he may direct the attorney general to file suit to enjoin application of an unconstitutional state statute. That sort of enforcement authority is lacking with respect to a statute . . . that provides only for private civil enforcement.

Id. at 961 (internal citations omitted). Whereas in Bruning the attorney general had authority to enforce the Nebraska Constitution via a civil proceeding and the governor had authority to direct him to do so, see id., the Missouri department director here has no such authority. Given this essential factual distinction, Bruning does not control here.

-12-

In Digital Recognition Network, we further explained the statute's provision that the attorney general "may intervene and defend the Act's constitutionality in a private suit for damages" did not constitute enforcement authority. Id. at 962. We noted "[t]he private litigant alone seeks to enforce private rights under the statute, and if the private litigant elects to discontinue the suit, then the attorney general has no further role in enforcing the statute against the defendant." Id. Here, the director does not have even this limited connection to enforcing the statute. See Mo. Rev. Stat. § 546.720. The statute does not authorize him to participate in a private suit in any way. See id.

The ACLU also emphasizes our conclusion in 281 Care Committee I that the "connection [between the official and the challenged statute] does not need to be primary authority to enforce the challenged law." 281 Care Comm. I, 638 F.3d at 632. That may be correct, but it is inconsequential here where the director has *no* "authority to enforce the challenged law." Id. The ACLU's reliance on Missouri Protection & Advocacy Services, Inc. v. Carnahan, 499 F.3d 803 (8th Cir. 2007), is similarly misplaced. In that case, we held the Missouri secretary of state and attorney general were proper defendants in a challenge to a statute barring individuals who had been adjudicated incapacitated from voting. Id. at 805-07. We decided the attorney general was potentially a proper defendant because the attorney general had enforcement authority to prosecute knowing attempts to vote illegally. Id. at 807. The secretary of state was connected to enforcing voter eligibility requirements because Missouri law obligated her "to send local election authorities the names of persons who are adjudged incapacitated" and that action may have been why the plaintiff was erroneously prohibited from voting. Id.

The director has no analogous authority or obligation here. Although the director's authority to delineate the members of the execution team does affect who might have a private right of action against the ACLU, it has nothing to do with an execution team member's potential prosecution of such an action. Selection of the

-13-

execution team constitutes implementation of the statute in an administrative or ministerial sense and is not analogous to enforcing the statute's non-disclosure provision through a civil or criminal prosecution. The director's authority to define the members of the execution team is not an enforcement action within the meaning of Ex Parte Young and its progeny.

## III.   CONCLUSION

The judgment of the district court is reversed.

_____